IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN A. HANKS-LASHLEY                          CV 06-197-MA

       Plaintiff,                               OPINION AND ORDER

   v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.


RICHARD A. SLY
1001 S.W. 5th Ave., Suite 310
Portland, OR 97204
(503) 224-0436

       Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1  - OPINION AND ORDER

RICHARD M. RODRIGUEZ
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3748

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff Kathleen A. Hanks-Lashley seeks judicial review of a final decision of the Commissioner issued on January 24, 2006, denying her June 24, 2002, application (second application) for disability insurance benefits (benefits) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33.  This court has jurisdiction under 42 U.S.C. § 405(g).  For the reasons that follow, the court AFFIRMS the final decision of the Commissioner and DISMISSES this action.

**BACKGROUND**

     As noted, this matter involves the Commissioner's denial of the second of plaintiff's two applications for benefits.

**Plaintiff's First Application.**

     Plaintiff filed her first application for benefits in December 1999, alleging she had been disabled since May 11, 1999, because of a cervical spine injury, lumbar strains, back and neck pain, tendonitis, and depression, stemming from a motor vehicle accident the day before.  On November 30, 2001, after a hearing, the Administrative Law Judge (ALJ) found plaintiff could

perform her past relevant work as a grocery checker/cashier and
was not disabled.  The Appeals Council did not grant review and,
therefore, the ALJ's decision was the final decision of the
Commissioner.  This court affirmed the decision on judicial
review.  See Hanks-Lashley v. Barnhart, CV 04-298-MA, Opinion and
Order, issued Jan. 18, 2005.

**Plaintiff's Second Application.**

        In her second application for benefits, plaintiff asserts
substantially similar impairments to those alleged in her first
application.  The ALJ determined the disability onset date for
this application was November 30, 2001, the same date as the
final decision denying plaintiff's first application.  The ALJ
conducted a hearing on January 14, 2003, and held a supplemental
hearing on June 16, 2003, to address the results of additional
testing requested by plaintiff.  On August 25, 2003, the ALJ
found plaintiff could not perform her past relevant work but
could perform other work existing in significant numbers in
the national economy and, therefore, was not disabled.  The
Commissioner affirmed the ALJ's decision on appeal.  It is this
decision that is now before the court.

        Plaintiff seeks an order reversing the Commissioner's
decision and remanding the case for an award of benefits or,
in the alternative, remanding for further proceedings based on

3  - OPINION AND ORDER

the entire medical record.  The Commissioner contends her
decision is based on substantial evidence, is free from legal
error and, therefore, the court should affirm her decision
denying benefits.

## DISCUSSION

The Commissioner's final decision denying plaintiff's first
application for benefits, issued on November 30, 2001, was res
judicata as to the issue of plaintiff's ability to work up to
that date.  Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996).
That decision also created a presumption of continuing non-
disability as to plaintiff's second application.  To overcome
that presumption, plaintiff was required to present additional
medical evidence of changed circumstances such as a new
impairment not considered in her first application.  Id.

Here, the ALJ refused to reopen or revisit the final
decision on the first application issued on November 30, 2001
because "[t]here is no new and material evidence being offered
in the current application that changes the prior decision."
Tr. 20.  Accordingly, the ALJ determined "the only evidence that
will be reviewed [on the second application] will be from [the
date of] my prior decision of November 30, 2001, to the present."
The ALJ made his second non-disability determination based on
that limited evidence.

4 - OPINION AND ORDER

Plaintiff does not challenge the ALJ's decision not to reopen or revisit the first decision.  Plaintiff, however, argues the ALJ erred in limiting his review on the second application to the post-November 30, 2001, medical evidence.  She asserts that if the ALJ had considered the entire medical record including the medical evidence from the first application, he would have found changed circumstances sufficient to make a disability finding.[1]

The Commissioner asserts the post-November 30, 2001, medical evidence was sufficient to overcome the presumption of continuing non-disability, but did not constitute substantial evidence necessary to prove disability.

The two issues on judicial review are the proper scope of the medical evidence to be considered by the ALJ, and whether, in light of the appropriate medical record, the ALJ's non-disability decision is supported by substantial evidence.

**The Appropriate Medical Record**.

Plaintiff summarizes multiple medical records from her first application that reflect both her medical and psychological

---

[1] Defendant suggests plaintiff's counsel agreed during the hearing on the second application that it was appropriate for the ALJ to consider only medical evidence contained in the current record, i.e., medical evidence developed after November 30, 2001.  Plaintiff denies her counsel made such an agreement described by defendant.  The record is at best ambiguous on that point and, in any event, the court shall decide what is the appropriate record.

impairments as well as her alleged functional limitations, and asserts those records are relevant and should be considered on her second application.  That evidence, however, was part of the record fully considered by both the ALJ and this court on review and was found insufficient to establish disability.

Nevertheless, plaintiff suggests it would be "legally appropriate" for the ALJ to reconsider medical evidence from the first proceeding without reopening and reevaluating the prior decision.  Pls. Reply Mem. at 2.  I disagree.  To reconsider that evidence on her second application would result in a de facto reopening of plaintiff's first application on the merits, a result even plaintiff does not countenance.  See Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001)(the ALJ de facto reopened the prior disability claim by considering evidence on a subsequent claim that had been part of the record on the prior claim).

I conclude the appropriate medical record to be considered on review of plaintiff's second application included only those medical records dated after November 30, 2001.  The pre-November 30, 2001, records merely established a baseline from which the ALJ was able to determine whether there was a later change in plaintiff's medical condition sufficient to rebut the presumption of continuing non-disability and, if so, whether the post-November 30, 2001, medical evidence also established disability.

**<u>Disability Analysis Standards</u>.**

The initial burden of proof rests on the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

**The ALJ's Non-Disability Determination - First Application**.

This court affirmed the following findings in the ALJ's original sequential analysis:

At step one, plaintiff had not engaged in substantial

gainful activity since her alleged onset date of May 10, 1999.
At step two, plaintiff had physical impairments of degenerative
disc disease and neck injury that are severe, and migraine
headaches that are non-severe, and a mental impairment of
depression that is non-severe.  At step three, the ALJ found none
of plaintiff's impairments met or equaled the requirements of a
listed impairment.  The ALJ found plaintiff had the residual
functional capacity to lift 20 pounds occasionally and 10 pounds
frequently, sit, as well as stand and walk, six hours in an
eight-hour day,  and  is limited to occasional overhead reaching
with her right arm.  At step four, the ALJ found plaintiff could
perform her past relevant work as a grocery checker and cashier
and, therefore, was not disabled.  As a result of this finding,
the ALJ did not need to make a finding at step five.

**The ALJ's Non-Disability Determination - Second Application.**

On plaintiff's second application now before the court, the
ALJ's findings were substantially the same as his findings on her
first application except for a finding at step four that
plaintiff's functional limitations were somewhat greater than
previously found, in that she should not sit, or walk/stand, more
than 30 minutes at a time, should avoid climbing ropes, ladders,
and scaffolds, and only occasionally climb, bend, stoop, crouch,
crawl, or kneel.  Based on these additional limitations, the ALJ

found plaintiff is now precluded from engaging in her past relevant work.  At step five, the ALJ, however, found plaintiff could perform other jobs involving light work available in significant numbers in the national economy.

As on the first application, the ALJ made findings on the second application that plaintiff's statements regarding her impairments and their impact on her ability to work were not entirely credible.

**Medical Evidence - Physical Impairments.**

Peter L. Reagan, M.D. - Treating Physician.

Dr. Reagan has treated plaintiff since 1997 and continued treating her after November 30, 2001.  In February 2002, during a routine physical, plaintiff complained of a small nodule in the right trapezius midway off the shoulder and increased back pain. Plaintiff was comfortable on examination and the nodule was nontender.  Two weeks later, plaintiff complained of continued back pain and requested muscle relaxers and anti-inflammatory medication.  In September 2002, plaintiff reported she was swimming "and is very much enjoying it."  She was tired but fairly comfortable.  In January 2004, after pushing a plant, plaintiff reported "excruciating back pain" that was slowly improving.  She appeared tired.  Dr. Reagan noted the pain was overlying both SI joints, which were tender.  The pain was exacerbated when she stooped over.  Plaintiff's deep tendon

10 - OPINION AND ORDER

reflexes were bilaterally quite hyperactive secondary to her C-spine injury.  In May 2004, plaintiff reported to Dr. Reagan that her "back hurts less this week" but her activities doing such things as laundry was "limited."

      <u>Tatsuro Ogisu, M.D. - Consulting Physician</u>.

      In November 2002, Dr. Ogisu examined plaintiff at the request of Disability Determination Services (DDS).  He took a history, including the automobile accident that resulted in plaintiff's cervical spine injuries and work-related injuries described on her first application.  On examination, Dr. Ogisu found plaintiff's cervical range of motion was moderately decreased, with some "residual myelopathy" (functional changes), and she is "a bit hyperreflexic (exaggerated reflexes).  Plaintiff had full range of motion in the lumbar area, with only mild discomfort, was able to toe, heel, and tandem walk, and deep knee bend and rise, all without difficulty.  Her grip strength was moderately weak, her manual dexterity was good, and the upper extremities showed no deformity.  Dr. Ogisu noted an inconsistency, however, between her demonstrated ability to toe walk, and the almost immediate giving away of her ankle plantar flexors.  In addition, Dr. Ogisu found strength testing was limited by plaintiff's decreased effort and give-way.  He "suspect[ed] that her demonstrated weakness is largely

11 - OPINION AND ORDER

psychogenic," i.e., caused by mental factors.    In addition to
residual myelopathy from the cervical fusion, Dr. Ogisu diagnosed
mechanical low back pain.

Plaintiff described her functional limitations to Dr. Ogisu
as sitting limited to 20 minutes at a time on her worst days and
up to one-two hours on her best days, standing from 20 minutes to
one hour, walking around the block one-two miles, and lifting up
to 20 pounds.  She has problems with prolonged sitting, reaching,
lifting, and carrying more than five pounds.  Dr. Ogisu concluded
the functional limitations as to sitting, standing, walking and
lifting, at the upper limits, were not unreasonable, but the
findings did not support the stated limitation of reaching and
carrying no more than five pounds.

Dean Clark D.C. - Examining  Chiropractor.

In June 2004, Dr. Clark performed infrared imaging testing
to determine if there was thermal evidence of physiological
abnormality.  He interpreted the results to indicate abnormal
study results consistent with cervical myofascial strain and
neurological symptoms, bilateral shoulder strain and muscle
weakness, and an "unusual thermal presentation of the lower
lumbar spine."

Martin Kehrli, M.D.- Reviewing Physician.

In December 2002, Dr. Kehrli reviewed the medical records to

provide an assessment of Plaintiff's physical residual functional capacity.  He concluded plaintiff could occasionally lift twenty pounds and frequently lift 10 pounds, stand/walk and sit 6 hours in an 8-hour day, frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds, and she could occasionally balance, stoop, kneel, crouch, and crawl.  Dr. Kehrli concluded plaintiff retained the residual functional capacity to perform light work.

**Medical Evidence - Mental Impairments.**

Duane D. Kolilis, Ph.D. - Psychodiagnostic Examination.

In November 2002, Dr. Kolilis examined plaintiff as to her mental status and obtained information from her about her family, education, and employment history, in addition to reviewing medical records.  Among his clinical impressions at the end of the examination were that plaintiff was noncompliant with medications prescribed by physicians to address both her physical and psychological complaints, abused marijuana, did not suffer from a major depressive disorder, had a mild, non-disabling adjustment disorder related to the 1999 motor vehicle accident for which she had not sought therapy, and had "some Avoidant and Obsessive-Compulsive personality features" that were not severe enough for a diagnosis of Personality Disorder. Dr. Kolilis assigned a GAF score of 65, indicating "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or

school functioning . . . but generally functioning pretty well,
has some meaningful interpersonal relationships." DSM-IV, p. 32.
Finally, Dr. Kolilis opined that, as to a job, plaintiff is able
to understand simple one- to two-step instructions, maintain
regular attendance and punctuality, maintain attention up to two
hours at a time, sustain an ordinary routine without special
supervision, work with others without undue distraction, complete
a normal workweek, make simple work-related decisions, perform at
a consistent pace without unreasonable rest periods, ask simple
questions and request assistance, accept instructions from
supervisors, get along with coworkers, respond appropriately to
changes in work routine, and be aware and take precautions as to
normal hazards.  Dr. Kolilis also concluded plaintiff functions
at the average range of intellectual abilities.

       Paul Rethinger, Ph.D. - Psychiatric Review/Evaluation.

       Dr. Rethinger reviewed the medical records and concluded
plaintiff suffers from an adjustment disorder with anxiety and
depressed mood, a somatoform pain disorder, and marijuana
dependence.  He concluded plaintiff has a moderate restriction
in daily activities, mild difficulty in maintaining social
functioning, and mild difficulty in maintaining concentration,
pace, or persistence.  As to her mental residual functional

14 - OPINION AND ORDER

capacity, Dr. Rethinger found plaintiff was moderately limited in understanding, remembering, and carrying out detailed instructions but had no other significant mental limitations.

**The ALJ's Decision.**

In reaching his second non-disability determination, the ALJ properly considered only the limited evidence presented by plaintiff post-dating November 30, 2001, when the first decision was final.  As to plaintiff's physical impairments, the ALJ found "there is no clinical evidence to support her allegations of total disability."  Tr. 22.  As to her mental impairments, the ALJ found "no more than mild functional limitations in the areas of social functioning, concentration, persistence and pace and activities of daily living."  Tr. 23.  The ALJ also reiterated his concerns expressed in his decision on the first application that plaintiff was not entirely credible.

After careful review, I conclude the ALJ's findings on the second application, including his credibility finding, are supported by substantial evidence.  The court notes that plaintiff challenges the ALJ's rejection of Dr. Clark's chiropractic findings based on an infrared imaging report.  The record, however, is clear, that even if those findings had been considered, notwithstanding that Dr. Clark is not an acceptable

15 - OPINION AND ORDER

medical source, they would not have affected the non-disability decision in a material way.  The infrared imaging report confirms what all the medical sources have found, _i.e._, plaintiff has abnormalities in her cervical spine dating from the motor vehicle accident in 1999.  Although Dr. Clark finds the abnormalities are "consistent with decreased function and pain that would increase with physical use," he does not identify the specific functional limitations associated with the abnormalities.  Other medical sources, however, did so, and their findings support the ALJ's ultimate finding of non-disability.

### CONCLUSION

For the above reasons, the court AFFIRMS the final decision of the Commissioner that plaintiff is not disabled and, therefore, is not entitled to benefits, and DISMISSES this action with prejudice.

IT IS SO ORDERED.

DATED this 21  day of December, 2006.


 /s/  Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge


16 - OPINION AND ORDER

17 - OPINION AND ORDER